Filed 11/30/15  P. v. Cook CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>SHAD ERIC COOK,<br><br>        Defendant and Appellant. | A144618<br><br>(Sonoma County<br>Super. Ct. No. SCR654098) |

Shad Eric Cook (appellant) appeals from a judgment entered after having been found guilty of making a criminal threat (Pen. Code, § 422[1]) with a weapon enhancement (§ 12022, subd. (b)(1)).  Appellant's counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 and requests that we conduct an independent review of the record.  Appellant was informed of his right to file a supplemental brief and did not do so.  Having independently reviewed the record, we conclude there are no issues that require further briefing, and shall affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

On January 14, 2015, a first amended information was filed charging appellant with making a criminal threat (§ 422, count 1).  The information also alleged a weapon enhancement (§ 12022, subd. (b)(1)) and a prior serious felony conviction and prior strike conviction (§§ 667, subd. (a)(1), 1170.12).  Appellant waived his right to a jury trial, and a bench trial was held.

---

[1]All further statutory references are to the Penal Code unless otherwise stated.

1

The information was based on an incident that occurred on August 4, 2014.  At approximately 12:30 p.m. that day, James Clawson, a plainclothes private security guard at Whole Foods Market, received a radio call and a walk-up report by a Whole Foods employee that several customers were complaining that a white male—later identified as appellant—was aggressively panhandling at the storefront near the outside produce display area.  Clawson approached appellant, who was holding a baseball cap, turned upside down, and was sitting down with his back against a produce display.  Clawson identified himself as a security officer and displayed his company issued badge.  He told appellant he had received complaints about appellant's aggressive panhandling, and asked him to leave.  Whole Foods did not allow panhandling in front of its stores, and Clawson regularly dealt with panhandlers at the store.

Appellant told Clawson to "jump off a fucking cliff," and also said, "Fuck you asshole.  I don't have to do anything that you tell me."  As Clawson continued to ask appellant to leave, appellant became increasingly angry.  Appellant stood up and entered the store despite being told not to enter, and demanded to speak to the manager.  Clawson followed appellant into the store and called the mall's security guard, James Stryker, for assistance.

Stryker arrived in full uniform, received a briefing from Clawson, and contacted appellant by the cash registers.  Appellant was still "yelling profanities" and demanding to speak with the manager.  Stryker and Clawson repeatedly warned appellant that he needed to leave or face arrest for trespassing.  Appellant continued to shout profanities at Clawson and Stryker.  After being told more than ten times to leave, appellant left the store and walked toward the outside produce displays where he had previously been sitting.  Because this area was still within the property boundary of the store, Stryker and Clawson told appellant that he had to leave the store's property and not return.

At that point, appellant pulled out a small folding knife from his fanny pack, opened it, and said, "Well how about I just pull this knife out and fucking stab you with it."  He then stated, "Or I could just find you in a dark alley somewhere and slit your throat."  Appellant took a step forward with the knife raised in his hand.  Clawson feared

for his and Stryker's safety and took the threat seriously. Clawson raised his hand palms up in a "disarming posture," backed away, and urged appellant to put the knife away. Stryker removed pepper spray from his belt and told appellant to drop the knife. Clawson called police to report what was occurring. Appellant responded to Stryker, "fuck you, you rent a cop. I'm not afraid of your fucking pepper spray." According to Stryker, appellant was saying a lot of things under his breath; it was hard to hear everything he was saying. Appellant raised the knife again and made another forward gesture; Clawson continued to feel threatened.

Appellant then headed towards Range Avenue, and Stryker and Clawson followed him at a distance. Appellant was yelling insults back at the two men. At one point, Clawson saw appellant kneel down near an outside ashtray and do something with it. Periodically, appellant would look at the men and shout profanities at them. At one point, appellant, knife back in hand, informed the men that they had "messed with the wrong person." Clawson continued speaking to police on the phone, updating them as to appellant's whereabouts. He continued to fear for his safety.

A plainclothes police officer approached Clawson and Stryker in his unmarked car, provided identification, and obtained confirmation that appellant, who was still in sight, was the man they were following who had threatened Clawson. The officer stopped appellant at gunpoint and ordered him to the ground. Two marked police cars arrived and a uniformed officer took appellant into custody. After speaking with Clawson and Stryker, the officer arrested appellant for making a criminal threat. She searched appellant and found two folding knives in his possession. During cross-examination, Clawson admitted he was facing a lawsuit in another matter for using excessive force in his role as a security guard.

At the request of the defense, the trial court heard a tape of Clawson's call to the police. In the tape, Clawson provided his location and described how appellant threatened to stab him and Stryker.

Appellant took the stand in his own defense and testified that on August 4, 2014 at 12:30 p.m., he was panhandling near the produce section at the Whole Foods Market. He

3

was sitting with his hat out waiting for donations. He did not recall seeing any signs that forbade panhandling, although he might have ignored such signs if he had seen them.

Clawson, wearing plain clothes, approached appellant and identified himself as an undercover security agent, but appellant did not believe he was a security guard. Clawson told appellant to leave the store's property. Appellant responded that he wanted to speak to the store's manager. Clawson told appellant that he could not talk to the manager and ordered him to leave the store immediately.

Appellant entered the store and went to the customer service desk. Clawson met up with appellant there and told him to leave. There was no yelling or screaming at the time but appellant found Clawson's tone and demeanor rude and condescending, and they were having an argument. Appellant said he would be happy to leave the store as soon as a manager told him he needed to leave. Clawson was soon joined by Stryker. As soon as Stryker arrived, Clawson's behavior changed, and the two men approached appellant. Clawson removed handcuffs from his back pocket and said he would arrest appellant if he did not leave immediately. Appellant turned around and left the store, insulting them by referring to them as "rent a cops," and saying that he doubted the two men together could take him. He testified he was not swearing or yelling.

Clawson and Stryker followed, right behind appellant, as he left the mall and walked along the sidewalk. Stryker was so close that he was kicking appellant's heels. The two men threatened to handcuff appellant and said "all kinds of stuff," including how they were going to bounce his head off the pavement. As they argued, Stryker put his hand on appellant's shoulder and pushed him. Appellant told him not to touch him, and felt threatened. When Clawson then put his hand on appellant's shoulder, appellant stepped away and pulled out a knife. Appellant told the men that he was leaving and that there was no reason for them to touch him. By this point, appellant was about 30 to 40 feet from Range Avenue. Appellant backed away, and Clawson said he would call the police. Appellant told him to go ahead and do that.

Appellant put his knife away, sat down on a fire hydrant, and lit a cigarette. Clawson and Stryker then approached appellant. Stryker was carrying pepper spray in

4

his hand and he mimed using it. Appellant feared he would be pepper sprayed and arrested. He walked across the street and waited for police to arrive. When the two men continued to follow him, he kept walking along Range Avenue, at one point putting his cigarette out in an outdoor ashtray. Appellant was trying to keep the men away from him until the police arrived. Appellant continued to try to keep his distance from the men, but they continued to follow him, so he felt threatened. His goal was to stay in the area but keep the two men away from him.

At this point, a man in street clothes driving in a silver truck pulled up, jumped out, identified himself as a police officer, and, at gunpoint, ordered appellant to the ground. Appellant complied after asking to see the man's badge so that he could read it, because he was uncertain that the man was indeed a police officer. Another officer soon arrived and put appellant in handcuffs. Appellant told the officer that he did not believe that Clawson was a security guard and that he threatened no one. He never threatened to slit the men's throats. Appellant admitted he had been convicted of robbery in Texas in 1999. He testified that "[t]hey couldn't prove it, so we pled down to, I think it was, strong armed robbery or something like—I don't even remember. It was a long time ago. I never pled to no weapon, man. I don't believe in weapons."

The trial court found appellant guilty of making a criminal threat and found true the allegation that he personally used a deadly weapon—a knife—in the commission of that offense. The court found not true the recidivist enhancements. On March 17, 2015, the court sentenced appellant to the middle term of two years in prison for making a criminal threat, plus an additional year for the weapon enhancement. It awarded him 226 days of presentence confinement credit and 226 days of presentence conduct credit. It imposed a $1,200 restitution fine and suspended imposition of a parole revocation fine in the same amount.

## DISCUSSION

Appellant's counsel has filed a brief pursuant to *People v. Wende*, *supra*, 25 Cal.3d 436, and asks this court to independently review the entire record to determine if it contains any issues which would, if resolved favorably to the appellant, result in

5

reversal or modification.  A review of the record has disclosed no reasonably arguable appellate issue, and we are satisfied that counsel has fully complied with her responsibilities.  (*Ibid.*; *People v. Kelly* (2006) 40 Cal.4th 106.)  There was substantial evidence supporting the trial court's findings.  Appellant was adequately represented by counsel at every stage of the proceedings.  There was no sentencing error.  There are no issues that require further briefing.

**DISPOSITION**

The judgment is affirmed.

_____
McGuiness, P.J.

We concur:


_____
Pollak, J.


_____
Siggins, J.